GUISEPPE DIBIASE *vs.* RAY GARNSEY.

Third Judicial District, Bridgeport, April Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

No appeal lies from the granting of a nonsuit unless a motion to set it aside was made and denied.

Whether a penal statute is to be construed as preventing a recovery in a civil action arising out of a transaction within its terms, depends upon whether the legislature, in the interests of public policy, intended to make the very transaction itself unlawful and therefore void, or whether it merely intended to impose upon the manner and method of conducting the transaction, itself still legal in every respect, certain qualifications and conditions which, if disregarded, should expose the offender to criminal punishment.

If a plaintiff, to establish his claim, is obliged to derive his cause of action from an unlawful transaction, or, as the earlier cases express it, "to trace his title through an illegal act," he cannot recover.

Section 63 of Chapter 400 of the Public Acts of 1921 provides that every repairman or automobile mechanic shall, under pain of

DiBiase *v.* Garnsey.

fine or imprisonment or both, obtain from the owner of a motor vehicle written authority for any expenditure for repairs in excess of $50. *Held* that in view of the apparent object of the statute, to afford necessary protection to owners of motor vehicles against sudden and unexpected demands, it must be construed to render the transaction itself illegal; and that a repairman could not recover charges made in violation of its terms.

Argued April 14th—decided July 30th, 1925.

ACTION of replevin to recover the possession of an automobile, brought to the District Court of Waterbury and tried to the jury before *Makepeace, J.;* verdict and judgment for the defendant to recover of the plaintiff the sum of $387 upon his counterclaim for repairs alleged to have been made by him upon the automobile, and appeal by the plaintiff. *Error and new trial ordered upon the counterclaim.*

*Ralph Coppeto,* with whom, on the brief, was *Charles W. Bauby,* for the appellant (plaintiff).

*Michael V. Blansfield,* for the appellee (defendant).

KEELER, J. This was an action of replevin to recover possession of a certain auto truck and for damages for its detention. The complaint is in usual form alleging ownership of the truck and right to its possession. The first defense of the answer put in issue all of the allegations of the complaint except ownership. Defendant filed a further special defense, alleging that he was engaged in the business of repairing automobiles and that the plaintiff left with him the truck for repairs, including supplying new parts, which he made; that ·afterward he demanded payment for his services, which plaintiff neglected to make; that thereafter plaintiff paid him $222.01 on account of the repairs, leaving a balance due of $419.89, and that

defendant refused to deliver the truck until this balance was paid; that defendant had stored the truck from March 24th, 1924, until June 19th, 1924, and that $40 was due the defendant for storage. Defendant also, by way of counterclaim, claimed damages of $459.89 for parts supplied, repairs and storage. The plaintiff denied the allegations of the counterclaim, and also set up by way of special defense that defendant, when he received the truck for repair, failed to notify plaintiff as to what the charges for repairs would be, and failed to obtain from the plaintiff written authority for an expenditure in excess of $50 as required by § 63 of Chapter 400 of the Public Acts of 1921, and proceeded to make the repairs without having obtained such written authority. The court granted a nonsuit after plaintiff had rested his case, and the trial proceeded upon the defendant's counterclaim. Plaintiff, among other requests, asked for an instruction to the jury as follows: "If you find that the defendant (Garnsey) received the auto truck of the plaintiff (DiBiase) for repairs, and that the charges for same exceeded $50, and that defendant did not before said charges exceeded $50 obtain from plaintiff (DiBiase) written authority for making said repairs exceeding said sum of $50, then your verdict must be for the plaintiff." The plaintiff offered evidence at the trial and claimed to have proved that no notice was given to him by the defendant that the charges for repairs would exceed $50, and that no written authorization to proceed was obtained by defendant from the plaintiff, and that defendant began making repairs without such authorization. The defendant offered evidence and claimed to have proved that he had told plaintiff before beginning to make repairs that the labor cost of the same, without including cost of materials, parts or supplies furnished, would

be between $250 and $300, and also to have proved that plaintiff had admitted signing a repair card authorizing defendant to overhaul the truck and supply new parts where needed.

The trial judge instructed the jury that the statute above referred to did not concern the jury, and should not enter their minds as a defense, that it was a penal statute, and did not affect any contract which may have been entered into. The question of the recovery by defendant for services and supplies was left to the jury under proper instructions, and a verdict in his favor for $387 was returned and judgment rendered thereon.

The plaintiff in his reasons of appeal assigns error in granting the motion for a nonsuit. As no motion to set the same aside was made, this question is not properly before us. The remaining assignments of error are concerned with the refusal to charge upon the effect of the statute, and the charge as actually given. The only question before the court relates to the construction of this statute, which is as follows: "Sec. 63. REPAIRMEN. Whenever any repairman or automobile mechanic shall receive any motor vehicle for the purpose of making repairs he shall, before his charges upon the same shall exceed the sum of fifty dollars, obtain from the owner or possessor of such vehicle a written authority for any expenditure in excess of such sum. Any person who shall violate any provision of this section shall be fined not more than fifty dollars for the first offense, and for any subsequent offense not more than one hundred dollars or imprisoned not more than six months or both."

It is the claim of plaintiff that the provision of the statute requiring written authority to be obtained from the owner of a car by a repairman before any expenditure is made in excess of that sum, goes to the

formation of the contract, and that in default of such written authority no recovery can be had for a greater amount than $50, and that the statute is not merely penal as the trial court held.

Both of the contending parties invoke the authority of the case of *Sagal* v. *Fylar*, 89 Conn. 293, 93 Atl. 1027, and contend that their respective claims fall within the reasoning of the opinion therein. In that case the plaintiff, doing business under a trade name, had omitted to register the same in accordance with the provisions of the Public Acts of 1911, Chapter 277, now § 6505 of the General Statutes, and became liable to fine and imprisonment for so doing. Defendant plead this statute in defense of a contract between himself and the plaintiff, made by the latter in his trade name. This court held the defense to be insufficient. The opinion in the case reviews prior Connecticut decisions, and refers to the rule therein established, that is, that " 'every contract made for or about any matter or thing which is prohibited or made unlawful by statute is a void contract, though the statute does not mention that it shall be so, but only inflicts a penalty on the offender.' " The court held that the contract made by Sagal was not void within the meaning of the rule. Reviewing the earlier cases the court says that in each case the intent of the General Assembly was to prohibit the undertaking itself which was obnoxious to the statute, so that the act itself was forbidden which "furnished the foundation of the right of action," while in the case then under consideration the prohibition extended to the use of a name not his own, and did not extend to the contract made, which was not "for or about any matter or thing" prohibited. In the instant case, however, the particular transaction on any given occasion is prohibited by the statute. Every person is commanded thereby to

obtain a written authority before proceeding with work costing more than $50. Any repairman working upon an automobile is engaged in the performance of a contract, either express or implied, and the law says that when his charges have reached the limit of $50 he shall obtain from the owner of the car written authority to continue, that is, he shall enter into a new or further contract with the latter. If he does not do so, he is doing something about a matter or thing prohibited. In *Sagal* v. *Fylar,* 89 Conn. 293, 93 Atl. 1027, the distinction was drawn that the statute extended only to the qualification of the party to do business, and not to the transaction in question. In the instant case we have a condition entirely otherwise; the prohibited thing is the transaction itself, not a transaction by a party not qualified. Another important distinction between the present case and the case cited, is that in the latter the transaction was in no way connected with the lack of authority to do business; plaintiff was not making a contract in itself unlawful. In the earlier Connecticut cases noticed in the opinion in *Sagal* v. *Fylar,* one, *Funk* v. *Gallivan,* 49 Conn. 124, was concerned with the delivery of a chattel won by the successful holder of a lottery ticket; another, *Wilcox Mfg. Co.* v. *Brazos,* 74 Conn. 208, 50 Atl. 722, was to recover for breach of contract to erect a dam in violation of a statute requiring inspection and certification of plans by a State engineer; *Connecticut Breweries Co.* v. *Murphy,* 81 Conn. 145, 70 Atl. 450, was an action on a note given in consideration of illegal sale of liquor; *Finn* v. *Donahue,* 35 Conn. 216, was an action to recover for a loan of money on the Lord's day. In the latter case the distinction between a statute merely penal, and one which involves the prohibited transaction itself as giving a right of action is made clear. The court says: "The principle that a

party cannot recover who is obligated to trace his title through an illegal act was fully recognized in *Phalen.* v. *Clark*, 19 Conn. 421, and it was there said to be well settled that if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover." In *Phalen* v. *Clark*, this point was exhaustively discussed, and settled in the way just indicated. We regard this principle as decisive of the present case. In the instant case the defendant, counterclaimant, had to rely upon the very transaction made illegal by law. In *Sagal* v. *Fylar, supra,* the particular transaction is in no way involved, a transaction in itself legal and innocent; the claimed illegality went only to the personal capacity of the plaintiff to do business under an unregistered trade name. Had he contracted in his own name, as the court in its opinion observes (p. 296), "all possibility of criticism would have been avoided. The prohibition of the statute extended to the use of a name not his own. It did not extend to the business done or contract made." In the instant case the prohibition does exactly this thing; it does extend to the business done and the contract made. The statute as to the registration of trade names is a part of the general criminal law of the State, its object is to enable a person dealing with·another trading under a name not his own, to know the man behind the name, that he may know or make inquiry as to his business character or financial responsibility; it is in no way concerned with any particular transaction. Passing to the consideration of the mischief contemplated in the statute involved in the present case, and the remedial object apparently in view, and the considerations of public policy involved which, as we say in *Sagal* v. *Fylar,* are largely determinative of the legislative intent, we find here not a general criminal statute, but a special provision of the law relating to motor vehicles,

DiBiase *v.* Garnsey.

intended to promote fairness of dealing between owners of vehicles and repairmen. Accidents to cars usually occur suddenly, often when the owner or driver is on the road far from home, and dealing with an unknown repairman, and it is of vital importance to him to know what the cost of repairs will be, whether this cost will be such as to induce him to prefer to have the repairs executed at that time, or to defer them. Even if the owner is at home, the expense of repair of a car is so uncertain, that an owner might, in a given case, well be doubtful whether the undertaking was worth while. The statute meets just this difficulty and makes it possible for him to get some idea of the expense to which he may be put, and in case he is dealing with an unscrupulous person, protects him from extortion. The fact that to the limitation placed upon the making of the contract of repair, there is added a penalty, can hardly restrict the operation of the statute in a way to make it exclusively penal. So to do would largely impair its efficiency. It would be small satisfaction to an owner of a car who had been victimized by being charged an exorbitant repair bill, secured by a lien and giving rise to an enforceable claim against him personally, that after he had defended a lawsuit at considerable annoyance and expense, perhaps successfully, his only real redress was to cause the arrest of the man who sought to cheat him, and attend court perhaps in a State far from his residence as a complaining witness. If, on the other hand, he gets some fair estimate of the probable cost of repairs, and signs a written authority for the repairman to proceed with work beyond the cost of $50, the parties are placed in a position of honesty and fair dealing.

In holding the statute to be exclusively penal, the trial court erred. The judgment, however, cannot be absolute for the plaintiff, since there was involved in

the case the question of fact whether the plaintiff signed a written authorization, arising out of defendant's claim that plaintiff did so sign, which by the direction of the court was withdrawn from the consideration of the jury.

There is error, the judgment is reversed and a new trial is ordered upon the counterclaim.

In this opinion the other judges concurred.