BARRETT BUILDERS *v.* RHODA MILLER
(13816)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, HULL and SANTANIELLO, Js.

Argued February 6 and May 1—decision released June 12, 1990

---

*Santo M. Matarazzo,* for the appellant (plaintiff).
*Richard M. Leibert,* for the appellee (defendant).

PETERS, C. J. The sole issue in this appeal is whether a contractor who has failed to comply with the requirements of the Home Improvement Act; General Statutes § 20-418 et seq.; can nonetheless recover in quasi contract by demonstrating unjust enrichment[1] on the part of the homeowner for whom the contractor has performed work. The plaintiff, Barrett Builders, brought an action in three counts against the defendant, Rhoda Miller, alleging its right to recover for the value of goods and services represented by home improvements at the defendant's home. The plaintiff has not pressed the first and third counts, alleging breach of contract and recovery on a dishonored check. On the second count, sounding in quasi contract, the trial court ruled in favor of the defendant on her motion for summary judgment and subsequently rendered judgment in her favor. We transferred to this court, pursuant to Practice Book § 4023, the plaintiff's appeal

---

[1] The plaintiff has denominated its cause of action against the defendant variously as a claim of quasi contract, quantum meruit and unjust enrichment. Since these three theories, each based upon common law principles of restitution, are noncontractual actions by which a party may recover despite the absence of a valid contract; see *Burns* v. *Koellmer,* 11 Conn. App. 375, 384, 527 A.2d 1210 (1987); G. Palmer, "History of Restitution in Anglo-American Law," c. 3, vol. X, Restitution—Unjust Enrichment and Negotiorum Gestio, International Encyclopedia of Comparative Law (P. Schlechtriem Chief Ed.) pp. 32–33 (1989); we will refer to the theories collectively as quasi contract claims.

from the adverse judgment on count two of its complaint and now affirm the judgment of the trial court.

The plaintiff's complaint reveals the following. The parties entered into a written contract on March 24, 1988, for the acquisition and installation of kitchen cabinets and counter tops at the defendant's home. The contract defined the work to be done as ripping out old cabinets and tops and installing new ones, without providing any specification of size, materials or construction detail.[2] It indicated no date for performance. It did specify, however, that the total contract price of $9783 would be payable in three installments, a one

[2] The contract, in its entirety, is as follows:

"BARRETT BUILDERS
27 Elm Street
TARRIFFVILLE, CT 06081
Phone 658-1601

PROPOSAL SUBMITTED TO    Mrs. Miller
STREET                   690 Cherry Brook Rd.
CITY, STATE AND ZIP CODE Canton, Ct.
PHONE                    693-4068
DATE                     3-24-88
JOB LOCATION             same
JOB PHONE                same

We hereby submit specifications and estimates for: #1. rip out old cabinets and top. Buy and install new cabinets and counter top. Buy and install underlayment for floor, but no finish floor . . . repair ceiling . . . refinish ceiling as best as [possible] to match existing, and paint ceiling only
(No plumbing or elec. or paper)
#2. [Entry] ripout [closet] and install new Bay and install byfold door Buy and install underlayment for floor, but no finish floor. Install new door . . . labor only. Door will be at cost to me
Job will [illegible] by 1st
No plumbing, elec. or painting or paper on wall. Ceiling will be painted.
WE PROPOSE hereby to furnish material and labor—complete in accordance with above specifications, for the sum of:
Nine Thousand and Seven Hundred, Eighty Three dollars ($9783 no/100).
Payment to be made as follows: 1/3 down, 1/3 when cabinets are installed and 1/3 upon completion of job on Barrett Builders part.
All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be exe-

third down payment, another one third payment upon installation of the cabinets, and the remaining one third when the work was completed.

The plaintiff received the down payment as agreed. After it had begun work at the defendant's home on May 1, 1988, it received, on May 9, 1988, a check for the second installment in the amount of $3390. When the plaintiff discovered that the defendant had stopped payment on this check, the plaintiff stopped his work. The plaintiff alleged that the work was substantially completed at that time. The plaintiff claimed, in count two of its complaint, that the reasonable value of his labor and materials was $6783, the amount unpaid under the contract.

The defendant's answer and special defenses alleged, inter alia, that the plaintiff had failed to provide the defendant with a written contract containing the entire agreement, as required by General Statutes § 20-429.[3]

---

cuted only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized
Signature /s/ James H. Barrett
Note: This proposal may be
withdrawn by us if not accepted within _____ days.

ACCEPTANCE OF PROPOSAL—The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Date of Acceptance: 3/25/88
Signature /s/ Rhoda L. Miller
Signature _____ "

[3] General Statutes (Rev. to 1987) § 20-429 provides in pertinent part: "CONTRACT TO BE IN WRITING. NEGATIVE OPTION PROVISIONS PROHIBITED. OWNER TO RECEIVE COPY. REQUIRED PROVISIONS. (a) No home improvement contract shall be valid unless it is in writing and unless it contains the entire agreement between the owner and the contractor. . . .

"(c) The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed."

The defendant also alleged, in her counterclaim, that the cabinets installed by the plaintiff were inferior to the samples provided at the time of the contract negotiation.

The trial court did not address the underlying factual dispute between the parties in its memorandum of decision on the defendant's motion for summary judgment. It noted that the plaintiff had admitted that its contract with the defendant was unenforceable under § 20-429. Relying on the ruling of the Appellate Court in *Sidney* v. *DeVries,* 18 Conn. App. 581, 588–89, 559 A.2d 1145 (1989), the court concluded that the statute precluded a quantum meruit theory of recovery even as an implied exception to the requirement that home improvement contracts be in writing. It accordingly granted the defendant's motion for summary judgment.

The issue in this appeal is whether the trial court's ruling in favor of the defendant homeowner mistakenly interpreted § 20-429 to bar recovery in quasi contract for home improvements when the contractor has failed to comply with the statute's written contract requirement. The plaintiff contractor contends that there is no indication, either in the express language of the statute or in the legislative history of its enactment, that the legislature intended the Home Improvement Act to preclude its restitutionary cause of action. Since it would have been able to resort to these theories of recovery at common law, the plaintiff argues that the statute should not be construed to abrogate those

Prior to 1986, the provision now codified as subsection (c) was subsection (b). See Public Acts 1986, No. 86-94. The substance of the provision was not changed in the recodification. Amendments to § 20-429, in 1988, which added several other required provisions for a valid contract; Public Acts 1988, No. 88-269, § 9, No. 88-364, §§ 108, 123; are not relevant to our analysis since the transactions in this case took place prior to the effective date of the amendments.

remedies in the absence of a clear legislative mandate. We are not persuaded.

The starting point for our analysis is *Caulkins* v. *Petrillo,* 200 Conn. 713, 513 A.2d 43 (1986), in which we considered the ability of a contractor who has failed to comply with § 20-429 to recover for completed home improvements. In *Caulkins,* we rejected the contractor's argument that we should imply an exception to the written contract requirement of the Home Improvement Act, analogous to the law allowing recovery for partial or full performance under an oral contract unenforceable under the statute of frauds, when the contractor has fully performed its obligations under the agreement. Id., 718–19. After reviewing the language of the statute and its legislative history, we held that the provisions of § 20-429 are mandatory rather than permissive, and concluded that, in contrast to the statute of frauds, the Home Improvement Act "does not provide an exception to the requirement that home improvement contracts be in writing." Id., 717–18.

The plaintiff nonetheless maintains that our conclusion in *Caulkins* is not dispositive of the issue in this appeal. According to the plaintiff, *Caulkins* held only that an oral contract for home improvements is unenforceable notwithstanding partial or full performance of the contractor's obligations. That holding, it argues, does not address the availability of recovery in quasi contract, a cause of action that does not depend upon the existence of a valid agreement. In support of this contention, the plaintiff emphasizes that the statute provides only that "[n]o home improvement *contract* shall be valid unless it is in writing . . . . " (Emphasis added.) General Statutes § 20-429 (a) (1). The plaintiff argues that the statute's specific reference to the invalidity of the "contract," in conjunction with the legislature's use of broader language precluding "any action" in the case of the statute governing real estate

brokers; General Statutes § 20-325a (a); compels the conclusion that the Home Improvement Act does not bar recovery in quasi contract.

While it is true that the contractor in *Caulkins* argued only that he should be permitted recovery under a theory analogous to the law governing the statute of frauds, and that we therefore did not specifically address the availability of recovery in quasi contract, the difference between those theories of recovery is insignificant for the purposes of the Home Improvement Act. Recovery for partial or full performance of a contract that is unenforceable under the statute of frauds is based upon principles of restitution. See 3 Restatement (Second), Contracts § 375 (1981); Restatement, Restitution § 108 (d) (1937); 2 G. Palmer, Law of Restitution (1978) § 6.1, pp. 2–3, and § 6.4, pp. 29–32. "It is hornbook law that a party whose agreement is unenforceable under the Statute of Frauds or because of indefiniteness is generally entitled to restitution." *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 488, 460 A.2d 1297 (1983). The plaintiff's quasi contract claim in this case is likewise restitutionary. *Burns* v. *Koellmer,* 11 Conn. App. 375, 384, 527 A.2d 1210 (1987); G. Palmer, "History of Restitution in Anglo-American Law," c. 3, vol. X, Restitution—Unjust Enrichment and Negotiorum Gestio, International Encyclopedia of Comparative Law (P. Schlechtriem Chief Ed.) pp. 32–33 (1989). Neither form of recovery is an action on the contract. See 1 Restatement (Second), Contracts § 141, comment (a) (1981). Our conclusion in *Caulkins* that the legislature "intended no exceptions" to the written contract requirement, even for restitution when a contractor has fully performed its obligations under the invalid agreement, thus applies with equal force to the plaintiff's claim for quasi contractual recovery in this case.

Furthermore, it is no answer that the Home Improvement Act does not explicitly preclude quasi contract remedies. While the legislature has employed broader language in the real estate broker's statute, that statute encompasses commercial as well as consumer transactions. Moreover, the legislature has also on occasion been explicit in its desire to preserve common law remedies. The parental liability statute, for example, provides that "[t]he liability provided for in this section shall be in addition to and not in lieu of any other liability which may exist at law." General Statutes § 52-572 (c). The fact that the legislature did not use the "any action" terminology of the real estate broker's statute is thus not conclusive of the issue.

It bears emphasis that the Home Improvement Act "was passed for the protection of the public." *Caulkins* v. *Petrillo,* supra, 720. As we have consistently reaffirmed, remedial legislation must be construed liberally; *Mack Financial Corporation* v. *Crossley,* 209 Conn. 163, 166, 550 A.2d 303 (1988); *Borzencki* v. *Estate of Stakum,* 195 Conn. 368, 383, 489 A.2d 341 (1985); *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 520, 461 A.2d 938 (1983); and we have likewise held that the construction of consumer protection statutes is not limited by the rule that statutes in derogation of the common law must be strictly construed. *Rhodes* v. *Hartford,* 201 Conn. 89, 95, 513 A.2d 124 (1986). We therefore conclude that our decision in *Caulkins* that the written contract requirement of the Home Improvement Act is without exception applies also to the claims asserted in this appeal.

Even if we were to reexamine our decision in *Caulkins,* the arguments for recovery in quasi contract are unpersuasive. Connecticut law has long recognized that restitution is not available for performance rendered pursuant to a contract that is unenforceable on

public policy grounds. *McKnight* v. *Gizze,* 119 Conn. 251, 256, 175 A. 676 (1934); *DiBiase* v. *Garnsey,* 103 Conn. 21, 25–28, 130 A. 81 (1925); *Phalen* v. *Clark,* 19 Conn. 421, 432 (1849); *Design Development, Inc.* v. *Brignole,* 20 Conn. App. 685, 688–89, 570 A.2d 221 (1990); *Burns* v. *Koellmer,* supra, 379; see also 2 Restatement (Second), Contracts § 197 (1981). As long ago as 1849, this court stated that if a plaintiff cannot support his claim "without relying upon an unlawful agreement between himself and the defendant, he must fail." *Phalen* v. *Clark,* supra. Moreover, in a case strikingly similar to the present appeal, this court concluded, sixty-five years ago, that a mechanic who had failed to comply with a statute requiring written authorization before proceeding with proposed automobile repairs in excess of $50 could not recover for his repairs. *DiBiase* v. *Garnsey,* supra, 28.

We also note that courts in other states have held that a contractor who has failed to comply with the licensure requirements of a home improvement statute is barred from all recovery, contractual as well as quasi contractual, despite the lack of any provisions in those statutes concerning the ability of a nonconforming contractor to recover for its work. *Harry Berenter, Inc.* v. *Berman,* 258 Md. 290, 293, 265 A.2d 759 (1970); *Chosen Construction Corporation* v. *Syz,* 138 App. Div. 2d 284, 285, 525 N.Y.S.2d 848 (1988); *Mortise* v. *Liberty Owners Corporation,* 102 App. Div. 2d 719, 720, 477 N.Y.S.2d 2, aff'd, 63 N.Y.2d 743, 469 N.E.2d 529, 480 N.Y.S.2d 208 (1984). Underlying these decisions is the principle that a person who does not comply with the statutory requirements "will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy"; *Harry Berenter, Inc.* v. *Berman,* supra, 293; and that, "[t]o permit a

recovery on a quantum meruit would defeat and nullify the statute." Id., 296.

We do not agree with the plaintiff's contention that fairness requires that we allow recovery in quasi contract when a contractor is unable to seek damages for breach of contract. The plaintiff argues that a homeowner is unjustly enriched if allowed to reap the benefits of home improvements without making restitution for those benefits. Furthermore, it argues, the objective of the statute in protecting consumers from shoddy workmanship would not be hindered by allowing restitution, since the homeowner would pay only for the improvements actually received.

This argument ignores the concern that we expressed in *Caulkins* that, if recovery is permitted despite the fact that the underlying home improvement contract is invalid, a contractor could unilaterally expand the scope of the project beyond the contemplation of the invalid agreement, without the homeowner's consent, and recover for the unwanted work. As we stated in *Caulkins,* "if a home improvement contractor could, without a written contract, perform certain work and then allege an oral agreement for precisely the same work alleged to have been fully performed, the purpose and clear intent of § 20-429 would be thwarted." *Caulkins* v. *Petrillo,* supra, 720. The remedial purpose of § 20-429 would be placed in even greater jeopardy if a contractor could recover by merely demonstrating that services had been rendered, without even alleging that there was some sort of agreement for the work.

The facts of this case illustrate that the legislature could legitimately have determined that a home improvement contract "in writing and . . . [containing] the entire agreement between the owner and the contractor," as § 20-429 (a) requires, serves salutory evidentiary and cautionary policies in consumer pro-

tection. The skeletonic written agreement, executed on the plaintiff's form, provides nothing to indicate whether the parties contemplated that the defendant was to receive solid core kitchen cabinets, as she alleged, or hollow core cabinets, as the plaintiff apparently supplied. Reading this incomplete agreement, the defendant would not have had warning about the juridical risk of contradictory evidence to which she was being exposed. Without further specifications, she would not have been able to consider, in the interim before the work was begun, whether she had entered into a reasonable, competitively priced bargain. Given the history of continued consumer complaints about home improvement contracts,[4] we are persuaded that strict compliance with the mandate of the statute is inconsistent with permitting recovery in quasi contract.

We recognize that our decision may lead to a harsh result where a contractor in good faith but in ignorance of the law performs valuable home improvements without complying with § 20-429. We are unpersuaded that this deficiency in the statute is within our power to remedy. Clearly, the legislature is entitled, in the first instance, to impose the burden of compliance with the statute on the professional, the contractor, rather than on the nonprofessional, the consumer. Viewing the continued incidence of complaints about home improvement contractors, the legislature could legitimately view as more urgent the need to protect consumers from unscrupulous contractors than the

---

[4] We take judicial notice of a recent article published in the New York Times; see *Mahoney* v. *Lensink,* 213 Conn. 548, 562 n.20, 569 A.2d 518 (1990); *Moore* v. *Moore,* 173 Conn. 120, 123 n.1, 376 A.2d 1085 (1977); reporting that the Connecticut department of consumer protection receives more complaints regarding home improvement contractors than any other type of business enterprise. According to the department's figures, 1786 complaints involving home improvement contractors were received in 1989, up from 1406 in the previous year. New York Times, April 1, 1990, p. 11.

need to protect innocent contractors from manipulative consumers.[5]

This case illuminates an additional problem that recovery in quasi contract in disregard of § 20-429 poses. It is evident that the objective of the Home Improvement Act is not only to protect homeowners from substandard work, but also to ensure that homeowners are able to make an informed choice on a decision that has potentially significant financial consequences. As one legislator commented, the statute seeks to promote "the right of the consumers to some *understanding,* some protection." (Emphasis added.) 22 S. Proc., Pt. 17, 1979 Sess., p. 5797, remarks of Senator Audrey P. Beck. By requiring that home improvement contracts be reduced to a writing containing the entire agreement, § 20-429 serves to enlighten the homeowner as to the precise nature, scope and cost of the proposed project, and thereby to caution against improvident use of family resources.[6]

From this perspective, there is not a good fit between the policy of the statute and any readily available measure of recovery in quasi contract. The plaintiff's complaint suggests that the value of its goods and services,

[5] A question remains concerning the ability of a homeowner to recover a down payment or progress payments made during the performance of home improvements but prior to the discovery of the invalidity of the contract. It is not clear whether a homeowner who has received materials and services and has made payments in recognition of that benefit can recover those payments. Arguably, a homeowner who has made such progress payments has impliedly consented to the work performed. The issue raised by a suit to recover partial payments differs substantially from that raised by refusal to pay sums alleged to be due on an invalid contract. We need not resolve that thorny issue today.

[6] The plaintiff has conceded his noncompliance with the three day cooling off period as required by one of the amendments added to General Statutes § 20-429 in 1988. Public Acts 1988, No. 88-269, § 9. This amendment underlines the legislature's concern that the Home Improvement Act provide an opportunity for considered judgment on the part of the homeowner.

even though incomplete, is precisely the amount of the unpaid contract price. That measure is surely inappropriate. As a minimum, the import of § 20-429 is that the defendant was privileged, in the absence of an allegation of bad faith, to repudiate an agreement in violation of the statute. Since it is only an unwarranted repudiation that permits a party to recover the reasonable value of the services rendered in an action in quantum meruit; *Rossetti* v. *New Britain,* 163 Conn. 283, 292, 303 A.2d 714 (1972); the plaintiff is not entitled to that measure here. Alternatively, the plaintiff might conceivably retreat to a measure of damages, according to the principles of unjust enrichment, that looks to the benefit it has conferred on the defendant rather than the loss that the plaintiff has suffered. *Monarch Accounting Supplies, Inc.* v. *Prezioso,* 170 Conn. 659, 666–67, 368 A.2d 6 (1976). What benefit, however, has a homeowner received by getting unwanted goods and services? Judicial assessment of such a "benefit" would necessarily be so speculative as to undermine the objectives that the statute sought to achieve.

The legislature, having responded to the plight of consumers overborne by high pressure home improvement salesmanship, ought nonetheless to contemplate the possibility that some inexperienced contractors may encounter homeowners who use § 20-429 as a sword rather than as a shield. The legislature may want to consider requiring homeowners to exercise their statutory rights within a reasonable period of time after notice thereof. The legislature might also adopt a formula for restitution damages, such as allowing the contractor to recover a stated percentage of the value of his total performance, subject to an offset if a homeowner establishes a right to recover damages. Compare General Statutes § 42a-2-718 (2) and (3). Finally, the legislature might want to distinguish between a homeowner's invocation of the statute as a defense to

an action by a contractor and a homeowner's affirmative reliance on the statute to recover a down payment or progress payments that represent work performed in good faith by a contractor. This court cannot, however, supply these forms of recovery absent authorization from the legislature.

The judgment is affirmed.

In this opinion GLASS, HULL and SANTANIELLO, Js., concurred.

SHEA, J., with whom CALLAHAN and COVELLO, Js., join, dissenting. There is nothing in the language of General Statutes (Rev. to 1987) § 20-429 declaring that "[n]o home improvement contract shall be valid unless it . . . contains the entire agreement between the owner and the contractor" that compels this court to disallow the restitutionary remedies of recovery for the reasonable value of services or for unjust enrichment sought by the builders in this action. In the case on which the majority primarily relies, *Caulkins* v. *Petrillo*, 200 Conn. 713, 513 A.2d 43 (1986), in which we held that neither part nor full performance could support a recovery pursuant to the terms of a contract for home improvements not conforming to the requirements of § 20-429, we decided only that "the remedial purposes of the statute would be undermined if this court were to permit a contractor to *enforce* an oral contract on the grounds claimed."[1] (Emphasis added.) Id., 720.

[1] The majority opinion incorrectly implies that *Caulkins* v. *Petrillo*, 200 Conn. 713, 513 A.2d 43 (1986), addressed the availability of restitutionary remedies: "Our conclusion in *Caulkins* that the legislature 'intended no exceptions' to the written contract requirement, *even for restitution* when a contractor has fully performed its obligations under the invalid agreement, thus applies with equal force to the [contractor's] claim for quasi contractual recovery in this case." (Emphasis added.) There is no mention of restitution or any equivalent reference in *Caulkins*, nor was that subject before us.

Obviously, if an oral contract for home improvements were enforceable in the same manner as a written contract, § 20-429 would be a nullity. The issue presently before us, however, is not whether a contract invalidated by § 20-429 should be enforced according to its terms, but whether a contractor who, out of ignorance or carelessness, has not reduced his oral agreement to writing or otherwise has failed to conform to § 20-429, must forfeit the entire value of the services and materials he has furnished to a homeowner without any recompense.

As the majority concedes, in the analogous situation in which an oral contract is invalidated by the statute of frauds, General Statutes § 52-550,[2] a party is entitled to restitution of any benefit furnished pursuant to the contract. *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 488–89, 460 A.2d 1297 (1983). "Where no action can be maintained on an oral contract within the statute of frauds or for damages for breach of such contract, the law ordinarily will not permit one party to such unenforceable contract to retain benefits conferred upon him by the other party to the contract in the performance of it. The general rule is that a party who refuses to go on with a contract unenforceable by

---

[2] "[General Statutes] Sec. 52-550. STATUTE OF FRAUDS; WRITTEN AGREE-MENT OR MEMORANDUM. (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; or (5) upon any agreement that is not to be performed within one year from the making thereof.

"(b) This section shall not apply to parol agreements for hiring or leasing real property, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of the term."

reason of the statute, after having derived a benefit from a part performance by the other party, must pay for or return what he has received from the party under the contract. The statute of frauds was never intended to be used to permit one relying on it to enrich himself at the expense of another or to aid in defrauding such other person. To permit a party to an oral contract to accept the benefits of such contract and then invoke the statute to avoid payment would be using the statute to perpetrate a fraud." 73 Am. Jur. 2d, Statute of Frauds § 537; see 3 Restatement (Second), Contracts § 375 (1981). "The restitutionary remedy is given in order to prevent the statute from causing what all would agree to be a monstrous injustice." 2 A. Corbin, Contracts § 321, p. 157.

It is true that when the purpose of a statute would be defeated by allowing restitution, such a remedy cannot be permitted. The cases from other states cited by the majority, in which contractors were denied any recovery for their work because they had failed to obtain proper licenses, as the home improvement statutes in those states required, illustrate this principle. *Harry Berenter, Inc.* v. *Berman,* 258 Md. 290, 293, 265 A.2d 759 (1970); *Chosen Constructon Corporation* v. *Syz,* 138 App. Div. 2d 284, 285, 525 N.Y.S.2d 848 (1988); *Mortise* v. *Liberty Owners Corporation,* 102 App. Div. 2d 719, 477 N.Y.S.2d 2, aff'd, 63 N.Y.2d 743, 469 N.E.2d 529, 480 N.Y.S.2d 208 (1984). The purpose of such statutes, to ensure that home improvement work is performed by those having the requisite qualifications, would surely be frustrated if contractors could operate without the licenses required and still obtain, in restitution, the value of the services they perform. Similarly, the provision of General Statutes § 20-325a (b) declaring that "[n]o person . . . shall commence or bring any action in respect of any acts done or services rendered" as a real estate broker pur-

suant to a nonconforming contract has been construed to bar the recovery of a commission under the doctrine of unjust enrichment, not only because of its explicit all-encompassing language,[3] but also because such a recovery would allow a broker to receive the same amount of compensation payable under his nonconforming agreement without complying with the statute. *Currie* v. *Marano,* 13 Conn. App. 527, 530–31, 537 A.2d 1036, cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988); *Good* v. *Paine Furniture Co.,* 35 Conn. Sup. 24, 27–28, 391 A.2d 741 (1978); see 3 Restatement (Second), Contracts § 375, comment a, illustration 3. *DiBiase* v. *Garnsey,* 103 Conn. 21, 130 A. 81 (1925), on which the majority relies, further illustrates this principle, because to allow the automobile mechanic to recover, as the reasonable value of his services, the same measure of compensation to which his oral agreement entitled him, without the written authorization required by the statute for work exceeding fifty dollars, would leave the statutory prohibition with no sanction for its violation except the criminal penalty provided.

In the present case we are not concerned with the registration requirements of our Home Improvement Act, General Statutes §§ 20-420 through 20-427, which are similar to the licensing statutes involved in the cases cited by the majority and thus may be deemed to establish a public policy that would be frustrated by allowing restitution. The requirements of § 20-429 that all contracts for home improvements be in writing and contain specific provisions are quite similar to those

---

[3] The provision of General Statutes § 20-429 that "[n]o . . . contract shall be valid" is far less sweeping and does not by its terms preclude restitutionary actions. Its language is even less broad than the parallel provision of our statute of frauds, General Statutes § 52-550, that "[n]o civil action may be maintained" on a nonconforming contract, for which restitution, nevertheless, is held to be available. *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 488–89, 460 A.2d 1297 (1983).

contained in our statute of frauds, § 52-550, and presumably were intended primarily to implement the same concern, the prevention of fraud. From ancient times courts have recognized that it is essential to allow restitution to a party who has conferred a benefit upon another pursuant to a contract invalidated by the statute of frauds in order that the statute itself not become an instrument of fraud by imposing the draconian consequence of forfeiture for violation of its provisions. That § 20-429 is subject to the same abuse is amply demonstrated by this case and its companion cases, in which disputes about the amount due the contractors are resolved by the invocation of § 20-429, resulting in forfeitures enriching the homeowners regardless of the merits of the disputes or the value of the work performed.

The majority relies also on the principle that restitution is not generally available to recover for benefits conferred pursuant to a contract that is in violation of public policy, but overlooks the exception to that principle, as expressed in Restatement (Second), Contracts § 197, "unless denial of restitution would cause disproportionate forfeiture." As further explained, "the rule is subject to the exception stated in this Section that allows restitution in favor of a party who would otherwise suffer a forfeiture that is disproportionate in relation to the contravention of public policy involved." Id., comment b; see also 2 Restatement (Second), Contracts § 198. The general recognition of the availability of restitution for contracts violating the statute of frauds is an illustration of this exception, which would apply in like measure to the present case.

The majority attempts to justify its unique treatment of the written contract requirement of § 20-429 as compared to § 52-550 on the ground that the Home Improvement Act was enacted for the protection of the public, that it is remedial legislation and that it is a con-

sumer protection statute to be construed liberally. These familiar bromides would also apply to the statute of frauds and are no substitute for serious analysis of the consequences likely to flow from the denial of restitutionary remedies to those who perform valuable work without contracts conforming to § 20-429.

" 'Home improvement' includes but is not limited to, the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation or sandblasting of, or addition to any land or building or that portion thereof which is used or designed to be used as a private residence or dwelling place, or the construction, replacement, installation or improvement of driveways, swimming pools, porches, garages, roofs, siding, insulation, solar energy systems, flooring, patios, landscaping, fences, doors and windows and waterproofing in connection with such land or building or that portion thereof which is used or designed to be used as a private residence or dwelling place, in which the total cash price for all work agreed upon between the contractor and owner exceeds two hundred dollars." General Statutes § 20-419 (4). Thus, any person who agrees to perform any home improvement for more than $200 becomes a "contractor" who must comply with § 20-429 or suffer the loss of the labor and materials he has furnished at the will of the homeowner. General Statutes § 20-419 (3). The term "contractor" suggests an image of affluence or economic status that is wholly unrealistic when applied to the carpenters, plumbers, electricians, landscapers and other tradesmen involved in making home improvements within the definition of § 20-419 (4). Many of these self-employed workers lack the education necessary to be aware of the potential impact of § 20-429 on their occupations and are unable to afford the expense of obtaining the assistance of counsel, which may be disproportionate

to the amounts of the small contracts that provide their livelihood. The majority construes § 20-429 to furnish homeowners who engage these tradesmen to perform home improvements with a virtual license to steal by invoking that statute after substantial work has been performed without a proper written contract.

The majority recognizes that its "decision may lead to a harsh result where a contractor in good faith but in ignorance of the law performs valuable home improvements without complying with § 20-429," but is "unpersuaded that this deficiency in the statute is within our power to remedy." The opinion advances various suggestions for curing the inequities thus acknowledged, with the entreaty that the legislature should "contemplate the possibility that some inexperienced contractors may encounter homeowners who use § 20-429 as a sword rather than as a shield." It is not, however, the legislature but the majority that has created the problems so neatly thrust upon that body. Nothing in the language of the statute, its legislative history or applicable precedent requires that we adopt an interpretation so fraught with the danger of exploitation by the unscrupulous. In enacting § 20-429 the legislature may well have assumed that this court would follow our precedent with respect to the statute of frauds, which from ancient times has been construed to permit the restitutionary remedy of unjust enrichment precisely in order to avoid the opportunities for fraud that the majority has now created.

Accordingly, I dissent.