[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this condominium renovation controversy the parties entered into an oral agreement in which the defendant, a plumbing contractor, agreed to perform certain renovation work at the plaintiff's condominium in Branford, Connecticut. The agreed upon contract price was $12,700.00 toward which the defendant made two payments, totaling $8,500.00.
The defendant performed a substantial portion of the contract work during the period from September 1987 through late October 1987, when a dispute arose as to an interim payment for services already rendered by the defendant. The dispute was not resolved, and the defendant discontinued his work there. The plaintiff, thereupon, engaged the services of other contractors to do certain work, which he claimed, the defendant failed to perform under the oral contract entered into.
The plaintiff instituted the instant action on September 26, 1988, in a three-count complaint. The first count alleges that the defendant performed his work in a negligent and unworkmanlike manner; the second alleges that plaintiff was forced to expend $12,404.75 to rectify the work of the defendant; the third alleges the defendant violated the Home Solicitation Sales Act, 42-134a
et seq., by failing to provide a contract and failing to provide a written or oral notice of cancellation of the contract.
The defendant filed an Answer to the Complaint dated December 15, 1988, to which he added a Counterclaim for reimbursement for additional work performed, for which he claimed he expended $2,973.79.
On December 20, 1989 the plaintiff filed an Answer to the defendant's Counterclaim, to which he added two Counts of Special defenses, alleging various violations of statutes dealing with consumer protection.
A trial was had on the issues on July 25 and 26, 1990, and considerable testimony was adduced. The parties filed post-trial Memoranda, in which both brought to the court's attention that the Connecticut Supreme Court had just released three decisions, Barrett Builders v. Miller, 215 Conn. 316; A. Secondino Sons v. LoRicco, 215 Conn. 336; and Sidney v. DeVries, 215 Conn. 350, dated June 12, 1990 which, in each case, by a majority of 3 to 2 justices, it clarified and established the controlling law in situations involving oral contracts for consumer home improvement contracts.
Barrett Builders v. Miller, 215 Conn. 316, the lead decision, held that "absent proof of bad faith on the part of the homeowner, CT Page 25820-429 does not permit recovery in quasi-contract by a contractor who has failed to comply with the statutory requirement that `[n]o home improvement contract shall be valid unless it is in writing and unless it contains the entire agreement between the owner and the contractor'". In each case Justice Shea filed a strong dissent, joined by Justice Callahan, that the Barrett decision compels a disallowance "of the restitutionary remedies of recovery for the reasonable value of the service or for unjust enrichment."
Barrett Builders, supra, involved a written contract, but the decision, in A. Secondino Sons, Inc., supra, dealt with an oral contract, in which the plaintiff sought to recover "damages under theories of breach of contract, quantum meruit and unjust enrichment" The defendant in Secondino filed an answer claiming, inter alia, p. 338, that the recovery sought by plaintiff was barred by the Home Improvement Act, and, in a Counterclaim, alleged that the plaintiff's conduct was an unfair trade practice under CUTPA. The Secondino decision ruled in favor of the defendant on the Complaint and in favor of the plaintiff on the counterclaim seeking CUTPA damages.
The third case, Sidney v. DeVries, 315 Conn. 350, was a per curiam decision involving "whether a contractor in a construction contract, who has failed to comply with the requirements of the Home Improvement Act . . . can nevertheless recover in quasi contract by demonstrating unjust enrichment on the part of the homeowner." Here, also, there was no evidence that a written contract containing the "entire agreement between the owner and the contractor existed."
Sidney v. DeVries, supra, specifically held that 20-429 bars a home improvement contractor from recovering against a homeowner under a claim of quantum meruit "arising out of an oral contract." Relying on the Barrett Builders decision, supra, the Supreme Court denied the defendant contractor's attempt to recover. Based on he rulings in these cases, the plaintiff herein did not attempt to seek further payment under the oral contract involved. However, the plaintiff is seeking to offset the effect of these decisions, by claiming that the defendant contractor was negligent in the performance of the work he did perform for the plaintiff, and seeks damages under the theory of negligent performance.
Counsel for the parties have each submitted helpful legal memoranda in support of their positions. The defendant accepts the fact that under the decisions discussed above, because his contract with the plaintiff was oral, he cannot make any further claim for payment. The plaintiff, however, makes the claim that he suffered damages because of the "harm he suffered from the defendant's failure to commit to writing the precise terms of the contract . . . and from the defendant's negligence and disregard CT Page 259 for the plaintiff's property during the course of the job."
Some background data as to the parties and the events leading up to the making of the oral agreement are relevant. The plaintiff holds the title of "doctor", from a Ph.D degree obtained by him, which he uses on his checks. It is, therefore, obvious that the plaintiff was not an uneducated consumer in this case.
The evidence revealed that prior to August, 1987, Dr. Reed had been the owner of a condominium in Harbour Village, Branford, since 1976, and while already divorced, he had met a woman, Nancy Yale, to whom he had become engaged to be married. The plaintiff and Nancy Yale had agreed that after their marriage they would live in the plaintiff's Branford condominium. Nancy Yale indicated to Reed that she would feel more comfortable in a house formerly occupied by Reed's former wife, if a substantial renovation of the condominium were done.
Dr. Reed had apparently seen a small advertisement of the defendant, in a local newspaper, as shown here — (Exh. A).
[EDITORS' NOTE: EXHIBIT A IS ELECTRONICALLY NON-TRANSFERRABLE.]
The defendant Cirasuolo was apparently contacted by the plaintiff, and came to Branford to discuss the work the plaintiff desired to have done. The significant portions of this advertisement (Exh. A) dealt with reference to "BATHROOMS BROUGHT UP TO DATE", at the top, and underneath a small picture, the legend "KITCHENS — Remodeled". The "ad" has the further statement that "WE DO THE COMPLETE JOB * WIRING * PLUMBING * FIXTURES * CABINETS". At the bottom of the "ad" was the trade name of the defendant, "CIRASUOLO PLUMBING HEATING and REMODELING".
Although the plaintiff was entitled to be called "Dr. Reed", on the basis of his Ph.D degree, and the defendant was a plumber with 43 years experience, it appears that although they discussed the proposed work to be done, that no written contract was executed. The plaintiff showed the defendant a picture in the May 1987 issue of the magazine entitled "Home", Exh. B, containing an article entitled "Bathrooms Achieving the Luxurious Look".
The plaintiff showed the defendant a page in this magazine where a picture of a luxurious looking bathroom in a 1920's French Hotel, showed a "vanity" in the left foreground.
The plaintiff has attempted to establish proof of negligence in the performance of the oral contract, and not depend upon the terms of the oral contract, which the parties admit was invalid, as a result of the decisions referred to above. The evidence adduced showed that the oral agreement required the defendant to CT Page 260 remove two bathrooms, and construct a new bathroom and a walk-in closet in their place. It appears that, as part of the job, two closets had to be removed so that their space could be incorporated into the new construction. New plumbing fixtures were to be installed, which were ordered by the defendant in August 1987; and he began his work in September 1987. The defendant testified that he continued on the job until sometime around October 19, 1987, when he had a dispute with the plaintiff over his refusal to make a payment to the defendant on account of work already claimed to have been finished. Plaintiff Reed admitted that the defendant was still on the job on October 14, 1987, when Reed made a second payment to him. The witness, Nancy Yale, whom plaintiff was to marry, testified as a defendant's witness, and stated that when she terminated her relationship with the plaintiff, on or about October 21, 1987, the defendant was still on the job. The time element is important to the defendant's position since he maintained that he walked off the job only because of Reed's refusal to make a payment on account for work already done.
The defendant maintained that he had completed all the required demolition work and most of the required work on the new bathroom and walk-in closet by the time he ceased working on the job. But he admitted that he had not completed the bathroom work, had not yet installed molding in the walk-in closet, and had not, installed the "vanity", and still had some minor connections to install in the bathtub.
One of the main disputes between the parties involved the issue as to who was to do the required repainting after the removal of the closets in the hallway and bedroom. Reed claimed that this work was part of the oral contract entered into. However, the witness, Nancy Yale, supported defendant Cirasuolo's claim that he was not responsible for painting, nor for doing anything beyond putting a plywood sub-floor in the walk-in closet.
Although the witness Yale had terminated her relationship with the plaintiff, she appeared a credible witness in testifying that, at the time the oral contract was entered into, it was the intention of Reed to redecorate the entire condominium to make Yale more comfortable in the house previously shared by Reed with his former wife. And, even Reed testified that "it wouldn't look right to renovate part of the house and not include the rest."
In support of his claim for damages, the plaintiff advanced nine (9) specific claims for which he was demanding compensation. One of his claims dealt with work done by a carpenter, Kevin Plude, hired by him to construct and install a custom "vanity" to be made by him; to finish installing a molding or baseboard in the walk-in closet; to reset a few tiles; and do some touchup of some CT Page 261 "grouting" in the new bathtub, at a cost to the plaintiff of $1,345.00.
Another claim involved engaging the services of another plumbing contractor — John Iadonisi Son. — to install the trim on the bathtub, check out the system, disconnect the old vanity, and reconnect new "vanity furnished by owner", all at a charge to the plaintiff for "material and labor" of $250.00.
The plaintiff's Memorandum, p. 5, makes the claim that the defendant should be held responsible for the painting of the remodeled bathroom and enlarged walk-in closet, because it was part of the "complete job" set forth in the defendant's advertisement. (Exh. A, set out above). He alleges that a valid inference could be drawn that some "scratched and gouged walls in various parts of his condominium" were "caused by the defendant or his workers and had to be rectified"; and that certain claimed lewd drawings on the bathroom wall, depicted in Exhs. C-1 and C-2, were drawn by defendant's workers. Because the Memorandum, p. 5, claims that the plaintiff is a very particular and meticulous person, he had to hire Richard C. Morgan Son, a painting contractor of Hamden, CT to do a complete repainting job. As detailed in Exh. J, this included the "bathroom, closet off master bedroom, master bedroom, den, stairway and hallway, living room, kitchen, front entrance and powder room", all at an expense of $5,680.00. No one from that painting firm appeared in court to testify as to the condition it found requiring such a complete painting overhaul of the entire condominium.
Another keenly disputed claim of damage made by the plaintiff, involved a bill for installing new wall-to-wall carpeting at an expense of $4,473.27 (Exh. J), by the H. M. Bullard Company of Branford, Connecticut. This covered "120 s.y." (square yards) of "Lincoln Green carpeting, with 1/2" padding", for which the attached check of Dr. John S. Reed, listed a total cash price of $4,708.50.
The defendant's counsel has submitted a comprehensive rebuttal to the plaintiff's claims, factual and legal, in his Memorandum of Law. Taking up the plaintiff's testimony, relative to his claim that he suffered nine (9) categories of damage, the defendant emphasizes that plaintiff, Reed, must sustain his burden of "proving actionable negligence . . . [and] had the further burden of proving the nature and extent of the damage proximately caused by [Cirasuolo's] negligence, and the reasonable amount of the losses resulting therefrom. This duty is spelled out in Hedderman v. Robert Hall of Waterbury, Inc., 145 Conn. 410, at pp. 413, 414.
Moreover, defendant's Memorandum points out that the fact that the plaintiff Reed incurred expenses is of no avail, unless CT Page 262 he can establish the required causal connection between the claimed expenses and the proven negligence, as brought out in Budney v. Zalot, 168 Conn. 388 (1975). The defendant argues that since, admittedly, the oral contract in issue was not valid, under Barrett Builders, supra, there was no contract to be breached, and therefore, the defendant could not be held liable under the terms of an invalidated contract. The only justifiable issue was whether defendant had performed the services completed by him in a workmanlike manner.
Reed had the right to bring an action sounding in negligence, claiming damages, if they came within the purview of a claim of negligence and not on contract-created claims. But, as defendant maintains in his Memorandum, any claim of damages based on the invalid oral contract would not be allowable, since they would be based on terms of the barred oral contract.
The plaintiff engaged the services of Kevin Plude, a carpenter, to complete the work not finished by defendant. This required: 1) constructing and installing a custom-made "vanity"; 2) finishing the molding or baseboard in the walk-in closet; and 3) resetting a few tiles and doing some touching up of some grouting on the new bathtub.
Defendant's counsel's brief also claims that the plumbing work done by the plumber, Iadonisi, was what, in the plumbing trade, would be termed as "finish" work; and that it was not the product of any negligence of the defendant. Defendant's counsel also points out that the sum of the two expenditures paid by plaintiff, i.e., $1345.00 for Plude, the carpenter, and $250.00 for the plumber, Iadonisi, total $1595.00.
Since the plaintiff was confined to a claim of negligence, he as required to prove that defendant was under a duty to perform under the applicable standard of reasonable care, discussed in Shore v. Stonington, 187 Conn. 147, 151 (1986). Plaintiff did not seek to solicit the opinion of his plumber, Iadonisi, who could have testified, as an expert, on the issue of the reasonable care required of a plumber in performing the work in issue.
The defendant's Memorandum is also correct in pointing out that the plaintiff, Reed, relied solely on his own testimony, that defendant left the premises dirty and dusty. He admitted that he, himself, knew nothing about building construction or the plumbing trade.
Continuing his analysis of the plaintiff Reed's claim for damages, the defendant argues that four of the nine claims of damage dealt with personal property items; and that the plaintiff would not testify from personal knowledge that these damages were CT Page 263 caused by the defendant or one of his workers. Plaintiff was required, as set out in Wu v. Fairfield, 204 Conn. 435, 439
(1987), to show that a causal connection existed between the injury complained of (the plaintiff's claims of damages), and the negligent acts proven. And this decision emphasizes, p. 439, that "[t]his causal connection must be based upon more than conjecture and surmise." Vetre v. Keens, 181 Conn. 136 (1980), p. 139, also alludes to the basic principle of negligence law that a "causal relation between the defendant's wrongful conduct, and the plaintiff's injuries [here damages] must be established in order for the plaintiff to recover damages." See also Bellman [Belhman] v. Universal Travel Agency, Inc., 4 Conn. App. 688 (1985).
The defendant further brings out that the evidence adduced indicated that other people also had access to plaintiff's condominium during the time period involved. And, continuing his breakdown of the plaintiff's claim of damages, the defendant posits that, assuming arguendo, that the required causal connection discussed had been proven, there was no sufficient proof of damages adduced.
The defendant must be upheld on his defense of no liability regarding the plaintiff's claim for reimbursement for payment for the cleaning services of Joanne Janicki, d/b/a J J Services, since he was able to show that, based on the testimony of both plaintiff Reed and Ms. Janicki (of the J J Services), Reed did not pay any additional money to her as a result of plaintiff's work, and that, therefore, he suffered no compensable damages.
Defendant's Memorandum next addresses the claim of the plaintiff that he was required to buy replacement carpeting throughout the house, because of dirt and stains created on it by defendant. Defendant points out, however, that Reed testified he did not know how the stains on the carpet were created; and more significantly, he admitted that he made no attempt to have the carpet cleaned in mitigation of damages. Despite the defendant's claim that the alleged staining damage was confined to the living room, Reed testified, and his Exh. I, the bill from the Bullard Furniture Company, showed that Reed purchased and had carpeting installed for the whole house. The evidence also substantiated the defendant's claim that Reed had ordered the new carpeting before the defendant ceased working on the job on or about October 18, 1987. Reed's admission that he made a second payment on October 14, 1987, indicates strongly, that as of that date, he was not dissatisfied with the work the defendant was doing.
Defendant's Memorandum traces a similar sequence of events as to the plaintiff's claim that, because defendant's workmen had created some scratches on the walls, he had to have the entire home repainted by the painting contractor, Roland C. Morgan, at a CT Page 264 cost of $5600.00. (Exh. J). No one from this painting contractor appeared as a witness to attest to the condition and nature of the damage to the walls prior to doing the repainting job.
The plaintiff's Memorandum treats only of the factual issues involved, i.e., the damages claimed. No discussion of the applicable law (except the three decisions decided by the Conn. Supreme Court, discussed) was set forth in the plaintiff's Memorandum. This is in sharp contrast to the detailed analysis expounded in the defendant's Legal Memorandum.
Based on the totality of the evidence adduced by the parties herein, the undersigned makes the following:
Finding of Facts
1) The oral contract entered into by the parties was invalid, as per the decisions of our Supreme Court, discussed supra.
2) The plaintiff had the burden of proving the allegations of the complaint by the required preponderance of the evidence.
3) The credibility of the witnesses who testified is peculiarly the function of this trial court to weigh and decide.
4) Upon due consideration, the undersigned finds that the testimony of the defendant Cirasuolo, and that of the witnesses called by him, including Nancy Yale, whom Reed had planned to wed, was more convincing than that of the plaintiff, Reed's witnesses.
5) As a highly educated person, the plaintiff Reed's claim that the oral contract was forced upon him by the defendant is tenuous and not found proven.
6) The plaintiff's claim as to the need to do a major recarpeting job in his condominium, because of the defendant Cirasuolo's negligent work is not found proven in evidence adduced.
7) Nor is his claim as to the need to have a major repainting job done, because of negligence of the defendant, found proven.
8) The undersigned finds that the prospective marriage of the plaintiff and Nancy Yale, at the time of the execution of the oral contract, was the main inducement for the plaintiff to have the expensive carpeting and painting work done.
9) There was no sufficient evidence that a causal connection was proven tying the damage to the articles of personalty, listed by the plaintiff as a "video cassette recorder"; the soiling of CT Page 265 plaintiff's clothes, necessitating an expenditure of $560.00 for their cleaning: the breaking of a "decanter" and an "eagle statue; all claimed to have been damaged in the sum of $1386.00.
10) The claim of the plaintiff for a $641.17 reimbursement for the J J Cleaning Services was not due to the negligence of the defendant.
11) The unfinished work required of the defendant with regard to the bathtub grouting and the repairing of some loose tiles, required a minor expenditure for their repair, as shown by the charge of $250.00 made by plaintiff's plumber, Iadonisi. This damage is not recompensable to the plaintiff, in view of the disparity of that amount with the balance due to the defendant of $4200.00, to which he cannot make claim, in view of the Supreme Court decisions discussed.
Conclusion
The undersigned, therefore, concludes and holds:
1) That it would be inequitable on the totality of the evidence to order the respondent to pay to the plaintiff the sums claimed as damages, because the required causal connection with some proven negligence of the defendant, has not been established.
2) Accordingly, the plaintiff's claim for damages in the amount of $13,695.14 is denied.
3) As per the decision in A. Secondino Sons v. LoRicco, discussed supra, p. 344, this trial court finds expressly that the plaintiff has failed to prove any damages arising out of "CUTPA" violations, or the commission of an unfair trade practice. He, therefore, finds and concludes that the plaintiff is not entitled to an award of punitive damages or for attorney's fees under42-110g(d), nor for the entry of any costs in his favor.
Judgment for the defendant, John Cirasuolo, is entered accordingly. The defendant's counterclaim is hereby denied.
A. FREDERICK MIGNONE State Trial Referee