[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On May 26, 1993, the plaintiff, Oscar Thomsen, Inc. (Thomsen), plumbing and heating contractor, filed a revised three count complaint against the defendants, Ruth Cushing and Babarovic 
Sonkin.[1] In the first count of the revised complaint Thomsen alleges that it entered into an agreement whereby, from approximately January, 1990 through August, 1990, it provided plumbing and heating materials and services in connection with renovations and additions to premises located at 44 Husted Lane, Greenwich, which were to be paid for by defendants. Thomsen CT Page 10589 alleges that the agreement with the defendants consists of four documents that are attached as exhibits to its revised complaint: (1) a copy of the Architectural and Construction Agreement dated November 3, 1989; (2) a copy of the AIA Standard Agreement Between Owner and Contractor dated January 16, 1990; (3) a copy of an invoice dated July 11, 1990 from Thomsen to Babarovic Sonkin regarding job extras totaling $17,433.20; and (4) a copy of an invoice dated July 6, 1990 from Thomsen to Babarovic Sonkin regarding extra work in a bathroom totaling $4,000.
Thomsen alleges that the defendant made three payments, totaling $50,000, and a balance of $16,633.20 remains due and outstanding. In its second count, Thomsen further alleges that the reasonable value of the services and materials it has provided to the defendants, less the payments it has received, is $16,633.20. Finally, in its third count, Thomsen alleges that the defendants have been unjustly enriched.
On June 9, 1993, the defendant Cushing filed an answer and nine affirmative defenses directed to all counts of the revised complaint. These defenses are: (1) Thomsen's claims are unenforceable due to its failure to first obtain a certification of registration under the Home Improvement Act (Improvement Act) as required by General Statutes §§ 20-420(a), 20-427(b)(5) and20-429(a)(8); (2) Thomsen's claims are unenforceable due to the failure of its agent, John M. Dixon, to be a registered salesman under the Improvement Act as required by General Statutes §§ 20-420(b),20-427(b)(7) and 20-429(a)(8); (3) the alleged agreements fail to comply with the requirements of the Improvement Act; (4) the claims by Thomsen for "extras" are unenforceable due to the lack of a signed, written agreement; (5) the alleged agreements are unenforceable due to Thomsen's failure to provide defendants with a copy of the agreements upon their execution in accordance with the Improvement Act, § 20-429(c); (6) the alleged agreements fail to comply with the requirements of the Home Solicitation Sales Act (Solicitation Act); (7) any agreements, authorizations, change orders or amendments claimed by Thomsen that are not contained in the writings attached to the revised complaint are unenforceable due to their failure to comply with the requirements of the Improvement Act and Solicitation Act; (8) the "extras" for which Thomsen claims it is entitled to payment were the plaintiff's obligation to provide pursuant to the alleged agreements; and (9) accord and satisfaction.
The defendant Cushing also asserted three counterclaims CT Page 10590 against Thomsen: (1) that she is entitled to a set-off due to plaintiff's failure to complete the work and supply the materials in accordance with the agreements; (2) plaintiff's claim to have performed work including draining and winterizing pipes and installing antifreeze, which, if performed, was performed negligently causing damage to defendant; and (3) plaintiff entered into a settlement agreement with the defendant to complete certain work in return for payment of $15,000, which was paid, but the plaintiff failed to complete the work making it necessary for defendant to hire other contractors to complete the work. On April 27, 1994, the defendant Cushing filed a revised amended answer that asserted a fourth counterclaim against Thomsen for violation of the Improvement Act, the Solicitation Act and the Connecticut Unfair Trade Practices Act.
The defendant Cushing filed a motion for summary judgment (#135) on the grounds that the plaintiff's claims are unenforceable under both the Improvement Act and the Solicitation Act.
Pursuant to Practice Book § 384 summary judgment shall be granted "`if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." (Citations omitted.) Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984); Farrell v. Farrell, 182 Conn. 34,39, 438 A.2d 415 (1980).
In determining whether an issue of material fact exists, the evidence is considered in the light most favorable to the nonmoving party. Strada v. Connecticut Newspaper, Inc., 193 Conn. 313,317, 477 A.2d 1005 (1984). In deciding a motion for summary judgment the trial court may consider affidavits and any other proof submitted by the parties, in addition to the pleadings. Pepev. City of New Britain, 203 Conn. 281, 285-86, 524 A.2d 629 (1987). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book § 381; Mingachos v. CBS, Inc., 196 Conn. 91, 111, 491 A.2d 368
CT Page 10591 (1985). A court cannot rely upon an affidavit when it does not satisfy the requirements of Practice Book § 381. Dime Savings Bankv. Zenesky, 8 CSCR 500, 501 (April 28, 1993, Lewis, J.). "If the affidavit and other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." New Haven Tobacco Co. v.O'Brien, 37 Conn. Sup. 815, 819, 438 A.2d 440 (App. Sess. 1981).
Summary judgment is inappropriate "where the inferences that the parties seek to have drawn deal with questions of motive, intent and subjective feelings." Dinnis v. Roberts, 35 Conn. App. 253,261, 644 A.2d 971 (1994). Nevertheless, to successfully oppose a motion for summary judgment, a party must raise a genuine issue of material fact even with respect to issues involving motive, intent and subjective feeling. Id., citing WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506
(1992).
Defendant Cushing argues that she is entitled to summary judgment on the ground that the alleged contract with plaintiff is unenforceable because Thomsen has failed to comply with the Improvement Act and the Solicitation Act as follows: (1) Thomsen failed to register as a home improvement contractor as required by General Statutes §§ 20-420(a), 20-427(b)(5) and 20-429(a)(8); (2) Thomsen's salesman failed to register as a home improvement salesperson as required by General Statutes §§ 20-420(b) and20-427(b)(7); (3) the contract is not signed by the defendant Cushing as required by General Statutes §§ 20-429(a)(2) and 42-135a; (4) Thomsen's claims are not based upon any agreement that contains the complete agreement as required by General Statutes § 20-429(a)(3); (5) the alleged agreement does not contain notice to defendant of her cancellation rights as required by General Statutes §§ 20-429(a)(6) and 42-135a; (6) Cushing was not orally informed of her cancellation rights at the time of the execution of the contract as required by § 42-135a(5); (7) the contract fails to state a completion date as required by § 20-429(a)(7); (8) Thomsen's claims for "extras" were not documented by written change orders signed by the parties as required by § 20-429(a); and (9) Thomsen did not provide a completed copy of the alleged contract to defendant as required by General Statutes §§ 20-429(c) and 42-135a(1).
In opposition, Thomsen argues that it is exempt from the Improvement Act pursuant to § 20-428(4) because, at all relevant times, John M. Dixon and its other employees were properly licensed to do plumbing and heating work pursuant to Chapter 393 of the CT Page 10592 General Statutes. Thomsen further argues that the Solicitation Act is not applicable because this was not a home solicitation sale. Finally, Thomsen contends that even if the Improvement Act and the Solicitation Act do apply, defendant is precluded from raising the plaintiff's alleged noncompliance with such acts by the doctrines of bad faith, waiver and estoppel.
1. The Improvement Act and Solicitation Act
The "objective of the Home Improvement Act is not only to protect homeowners from substandard work, but also to ensure that homeowners are able to make an informed choice on a decision that has potentially significant financial consequences." BarrettBuilders v. Miller, 215 Conn. 316, 327, 576 A.2d 455 (1990).
General Statutes § 20-429(a) provides that:
 [n]o home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor.
Section 20-429(c) requires that the contractor provide the homeowner with a completed copy of the home improvement contract when it is executed.
General Statutes § 20-429(e) provides in part that "[e]ach home improvement contract entered into shall be considered a home CT Page 10593 solicitation sale pursuant to chapter 740. . . ." See Habetz v.Condon, 224 Conn. 231, 234 n. 4, 618 A.2d 501 (1992); A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336, 337 n. 10, 576 A.2d 464
(1990); Luong v. Roy, Superior Court, judicial district of Hartford at New Britain, Docket No. 437905 (July 23, 1990, Goldberg, J.). Section 42-135a of the Solicitation Act provides that an agreement in a home solicitation sale is not effective if it is not signed and dated by the buyer, or if the seller fails to provide the buyer with a receipt or copy of all contracts and documents pertaining to such sale at the time of execution. The section also requires the contract to provide notice to the buyer of his cancellation rights as specified by the statute and requires the seller to orally inform the buyer of his right to cancel. General Statutes §§ 42-135a(1), 42-135a(2) and 42-135a(5).
A person cannot hold himself out to be a contractor or salesman, or offer to make or make any home improvement without first obtaining a current certification of registration. General Statutes §§ 20-420(a) and 20-427(b)(5). Furthermore, a contractor cannot employ any salesman for the purpose of procuring business from an owner or allow any person to act as a salesman on his behalf, unless the salesman is a registered home improvement salesman. General Statutes §§ 20-420(b) and 20-427(b)(7).
A home improvement contract must comply with the statutory requirements of § 20-429 in order to be valid. Caulkins v.Petrillo, 200 Conn. 713, 513 A.2d 43 (1986); see also BarrettBuilders v. Miller, supra, 215 Conn. 316. In Caulkins v. Petrillo, supra, the plaintiff contractor commenced an action to foreclose on a lien on the defendants' property and for damages in connection with a dispute over an oral modification of a home improvement contract. After the parties entered into a written contract, the plaintiff submitted a revised proposal that indicated that the cost of the work exceeded the original price which the plaintiff attributed to oral requests by the defendants for additional items. The plaintiff claimed that the defendants had orally consented to the revised proposal. Id.
The defendants moved to strike the complaint on the ground that the contract was not in writing and therefore, pursuant to General Statutes § 20-429, the contract was not valid. The court held that the language of § 20-429 was "clear and unambiguous" and performance of the statutory requirements was "mandatory rather than permissive." Id., 717. Accordingly, the court affirmed the judgment for the defendants on the ground that the revised proposal CT Page 10594 was not a valid, contract because there was no written indication that the defendants had agreed to it. See also Barrett v. Miller, supra, 215 Conn. 316 (affirming judgment for homeowner on the ground that the contract was unenforceable because it did not comply with General Statutes § 20-429); Wilke v. Cuzzocreo,9 CSCR 422 (March 24, 1994, Walsh, J.) (holding that the contract was not enforceable due to lack of notice of the owner's cancellation rights); Woronecki v. Trappe, 8 Conn. L. Rptr. 167 (January 5, 1993, Klaczak, J.), rev'd on other grounds, 228 Conn. 574,637 A.2d 783 (1994) (holding that an unregistered contractor cannot recover for home improvement services rendered pursuant to General Statutes § 20-429(a)(8)); W W Construction v. Gray, 7 CSCR 812 (June 8, 1992, Rush, J.) (holding that the contract was unenforceable because it did not contain start and completion dates and the agreement for extra work was not in writing); Cantillon v. Tripodi, Superior Court, judicial district of Waterbury, Docket No. 091525 (October 2, 1990, Langenbach, J.) (holding that the contract was not enforceable because it did not contain the entire agreement between the parties, the subsequent agreements were not reduced to writing, it was devoid of notice of the owner's right to cancel and it was not entered into by a registered salesman or contractor).
The contract in the present case does not comply with the statutory requirements of General Statutes § 20-429. The contract does not state a completion date, as required by § 20-429(a)(7). See W W Construction v. Gray, supra, 7 CSCR 812. The contract does not contain a notice to defendant Cushing of her cancellation rights, as required by General Statutes §§ 20-429(a)(6), 20-429(e) and 42-135a. See Wilke v. Cuzzocreo, supra, 9 CSCR 422. Defendant Cushing states in her affidavit that she did not receive oral notification of her cancellation rights, as required by General Statutes §§ 20-429(e) and 42-135a. Cushing further states that she did not personally sign the contract or receive a copy of the contract when it was entered into, as required by General Statutes §§ 20-429(a)(2) and 20-429(c).
There is no writing signed by Cushing, as required by § 20-429(a), that indicates that she agreed to the alleged "extras" to the contract, totaling $17,443.20, as reflected on the invoice from Thomsen to Babarovic Sonkin dated July 11, 1990 (attached as Exhibit C to the complaint). Caulkins v. Petrillo, supra,200 Conn. 713. Moreover, Cushing states that she never saw or signed any change orders, she was not aware of the alleged extra work and she did not agree to pay for such "extras." CT Page 10595
Additionally, the copy of the letter dated June 15, 1992, from the State of Connecticut Department of Consumer Protection indicates that Thomsen never held a Connecticut Home Improvement Contractor's Certificate of Registration and John M. Dixon never held a Connecticut Home Improvement Salesman's Certificate of Registration, as required by General Statutes §§ 20-429(a)(8),20-420(a), 20-420(b), 20-427(b)(5) and 20-427(b)(7).
For the foregoing reasons, the contract between plaintiff Thomsen and defendant Cushing fails to comply with the statutory requirements of the Improvement Act and the Solicitation Act, and accordingly, the contract is not enforceable.
2. General Statutes § 20-428(4)
Thomsen argues, however, that it is exempt from the requirements of the Improvement Act pursuant to General Statutes § 20-428(4) because, at all times, John M. Dixon and Thomsen's other employees were properly licensed to perform plumbing and heating work pursuant to Chapter 393 of the General Statutes. Defendant argues that plaintiff is not exempt from the act because General Statutes § 20-428(4) was not effective until after the time of the alleged contract and further, such exemption does not apply to Thomsen, a corporate entity.
As amended by No. 90-233 of the 1990 Public Acts, General Statutes § 20-428 provides: "[t]his chapter shall not apply to any of the following persons or organizations: . . . (4) any person holding a current license issued pursuant to Chapter 390, 391 or 393 provided such person engages only in that work for which he is licensed."[2] Public Acts 1990, No. 90-233, § 1. General Statutes § 2-32 provides that unless otherwise specified, all public acts shall take effect on the first day of October following the session of the General Assembly at which they are passed.
Public Acts No. 90-233 does not contain any specific language indicating the date upon which it was to take effect, therefore, it became effective on October 1, 1990. See Public Acts No. 90-233, § 1; General Statutes § 2-32; Parkhurst v. Ugolik,2 Conn. L. Rptr. 753 (November 13, 1990, Pickett, J.).
In Avon Plumbing Heating Co., Inc. v. Fey,11 Conn. L. Rptr. 453
(May 2, 1994, Parker, J.), the court held that General Statutes § 20-428(4) should be strictly interpreted and accordingly, the section does not apply to corporations. The court stated that CT Page 10596 "[o]nly individuals can be licensed under Chapter 393. . . . [A]n unlicensed person or corporation owning a plumbing business is not a `person holding a current professional or occupational license issued pursuant to the General Statutes.'" Id., 457. The court held that the plaintiff corporation, which did not hold a current professional or occupational license, was not exempted from the Improvement Act pursuant to General Statutes § 20-428(4). Id., 457-58. The court further held that "a corporation engaged in plumbing work on a home improvement project is not exempt from the Home Improvement Act even if all the work is performed by individuals holding current Chapter 393 occupational licenses for plumbers." Id., 458.
In the present case, the work performed by Thomsen, as alleged in the complaint, occurred during the period from January, 1990 through August, 1990. The work performed occurred prior to October 1, 1990, the date upon which General Statutes § 20-428(4) became effective and therefore, the exemption is not applicable. SeeParkhurst v. Ugolik, supra, 2 Conn. L. Rptr. 753. Moreover, as a corporate entity, Thomsen is not exempt from the Improvement Act pursuant to General Statutes § 20-428(4), even if all of the employees hold a current professional or occupational license. SeeAvon Plumbing Heating Co., Inc. v. Fey, supra,11 Conn. L. Rptr. 458.
3. Bad Faith
Thomsen argues that, even if the Improvement Act is applicable, defendant Cushing has acted in bad faith and, therefore, she is precluded from asserting noncompliance with the act as a defense in this action.
In the absence of proof of bad faith on the part of the homeowner, "a homeowner is privileged to repudiate a home improvement contract that violates the act." Wadia Enterprises,Inc. v. Hirschfeld, supra, 224 Conn. 247; see also A. Secondino Son, Inc. v. LoRicco, supra, 215 Conn. 340; Sidney v. DeVries,215 Conn. 350, 354, 575 A.2d 228 (1990); Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 350, 576 A.2d 149 (1990). "The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly,"Habetz v. Condon, supra, 224 Conn. 237. CT Page 10597
The burden of establishing the existence of bad faith is on the party asserting it. Id., 237 n. 11. Bad faith is defined as involving "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Id. "Bad faith means more than mere negligence; it involves a dishonest purpose." Id.
In Wadia Enterprises, Inc. v. Hirschfeld, supra, the court held that neither the fact that the defendants' attorneys had drafted the contract nor that the defendants initially enforced the contract and subsequently asserted the invalidity of the contract as a defense, indicated bad faith on the part of the defendants. Id., 249. "There is nothing dishonest or sinister about homeowners proceeding on the assumption that there is a valid contract, enforcing its provisions, and later, in defense to a suit by the contractor, upon learning that the contract is invalid, then exercising their right to repudiate it." Id. Accordingly, the court held that the plaintiff had "failed to present the necessary factual predicate to raise a genuine issue of fact as to the defendants' bad faith." Id., 250; Dinnis v. Roberts, supra,35 Conn. App. 253; Ibsen Brothers, Inc. v. Goldman, 8 CSCR 497 (April 21, 1993, Hadden, J.), aff'd, 34 Conn. App. 904, 641 A.2d 153, cert. denied 229 Conn. 924, 642 A.2d 1214 (1994); but see Habetz v.Condon, supra, 224 Conn. 231 (recognizing the existence of bad faith on the part of the plaintiff where additional work had been requested by the plaintiff and set forth in a written proposal by the defendant which plaintiff did not sign despite defendant's numerous requests).
In the present case, Thomsen has failed to raise a genuine issue of material fact as to Cushing's alleged bad faith. Thomsen argues that Cushing acted in bad faith because after it stopped working due to nonpayment, attorney Nancy Ramer, defendant's counsel, allegedly spoke with John Dixon, on behalf of Cushing, and requested that Thompsen return and complete the necessary work. Thompsen alleges that Ramer gave John Dixon assurance of payment and agreed to make a payment of $15,000, which represented the balance of $10,000 on the original contract plus $5,000 for the additional bathroom. Thompsen concedes that it received the payment from Cushing. Thompsen argues that the contract's noncompliance with the Improvement Act was never mentioned. In support of the contention, plaintiff submits the affidavit of Malcolm Dixon, son of now deceased John Dixon. Cushing argues that CT Page 10598 the affidavit of Malcolm Dixon does not comply with the requirements of Practice Book § 381 and, therefore, it should not be considered by the court.
There is no evidence that Malcolm Dixon had any Conversation with Ramer regarding completion of the work at the Cushing residence or that he was witness to any such conversations between John Dixon and Ramer. Such conversations between Ramer and John Dixon, as stated in the affidavit of Malcolm Dixon, are not within the personal knowledge of Malcolm Dixon and, therefore, they cannot be considered by the court. Practice Book § 381; see Dime SavingsBank v. Zanesky, supra, 8 CSCR 501. Even if the alleged conversations were considered, Thompsen has failed to raise a genuine issue of material fact as to a dishonest purpose or sinister motive on the part of Cushing, as is required to establish bad faith. Wadia Enterprises, Inc. v. Hirschfeld, supra, 224 Conn. 250;Brothers v. Goldman, supra, 8 CSCR 498.
4. Waiver
Thompsen further argues that Cushing waived the right to raise the Improvement Act as a defense when Ramer allegedly asked it to complete the necessary work and to add an extra bathroom, without insisting on compliance with the Improvement Act in connection with the additional bathroom.
In Wadia Enterprises, Inc. v. Hirshfeld, supra, the plaintiff asserted that the defendants had waived the protection of the Improvement Act by enforcing provisions of the contract and making payments pursuant to the contract. "Waiver is the intentional relinquishment of a known right. . . . Waiver need not be express, `but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so.'" (Citations omitted.) Id., 252; see also Novella v. Hartford Accident Indemnity Co., 163 Conn. 552, 561, 316 A.2d 394 (1972). The court then held that, assuming that an implied waiver may avoid the right to rely on the Improvement Act, the plaintiff would have to show that "the defendants knew of their right to invalidate the contract under the act before they could waive its protection." WadiaEnterprises, Inc. v. Hirschfeld, supra, 224 Conn. 252.
The plaintiff has failed to establish that Cushing intended to relinquish her right to invalidate the contract and, therefore, there was no waiver by Cushing. Id. CT Page 10599
5. Estoppel
Finally, Thompsen argues that Cushing should be estopped from raising the Improvement Act as a defense because Ramer allegedly requested that it return to complete the necessary plumbing and heating work, without mentioning any problems in regard to noncompliance with the Improvement Act.
In a footnote in Wadia Enterprises, Inc. v. Hirschfeld, supra, the court, without addressing the estoppel claim by the plaintiff, stated that "[Equitable] estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) Id., 252, n. 7, quoting O'Sullivan v. Bergenty,214 Conn. 641, 648, 573 A.2d 729 (1990). Furthermore, "it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." Id.
The court stated that it could not "apply the doctrine of equitable estoppel in a case in which the party requesting relief claims ignorance of the laws governing his own profession, when such ignorance of the law is the primary cause of his need for relief." (Citations omitted.) Id., quoting Currie v. Marano,13 Conn. App. 527, 532, 537 A.2d 1036, cert. denied, 207 Conn. 809,541 A.2d 1238; see also Ibsen Brothers, Inc. v. Goldman, supra,8 CSCR 499 (holding that although the Supreme Court had not yet determined the applicability of a claim of equitable estoppel as protection from the Improvement Act, the plaintiff had failed to establish the factual predicate necessary for such a claim).
Thompsen has failed to establish any act or statement, by or on behalf of Cushing, that was intentionally made to induce it into believing that if it completed the remaining work under the original contract, it would receive payment from Cushing for the "extras" that she had never requested or authorized. WadiaEnterprises, Inc. v. Hirschfeld, supra, 224 Conn. 252 n. 7. The doctrine of equitable estoppel cannot be applied to provide relief to Thompsen because its assertion for the doctrine is based upon its noncompliance with the laws that regulated its work. Id. CT Page 10600
Accordingly, Cushing's motion for summary judgment is granted.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of October, 1994.
WILLIAM BURKE LEWIS, JUDGE